IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN ALISE WALKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 19 C 08126 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) Judge John J. Tharp, Jr. ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant Carmen Alise Walker seeks judicial review of the Commissioner of Social Security's determination[1] that she is not disabled and therefore ineligible to receive disability insurance benefits. Before the Court is Walker's motion for summary judgment, the Commissioner's response to Walker's motion, and Walker's opposition to the Commissioner's response. ECF Nos. 11, 15, 16. For the following reasons, Walker's motion for summary judgment is granted in part and denied in part, and the case is remanded to the Commissioner for further proceedings.

**BACKGROUND AND PROCEDURAL HISTORY**

Walker alleges that she has been disabled since September 1, 2016. R. 15.[2] According to Walker's medical records, which span from August 2015 onward, Walker suffers from a right rotator cuff tear, asthma, emphysema, peripheral vascular disease, and rheumatoid arthritis. R. 17. Walker's medical records further reflect diagnoses of lupus, mixed connective tissue disease,

---

[1] The Clerk is directed to substitute Kilolo Kijakazi for Andrew M. Saul as the acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

[2] Citations to R. refer to pages in the administrative record, which was filed as ECF No. 7.

respiratory problems, Raynaud's disease, and depression, as well as headaches, obesity, skin abnormalities, and multiple hospitalizations. R. 18-21, 367, 382, 821. Walker alleges that her health problems manifest in chronic pain, the inability to stand or sit for prolonged periods, breathing difficulties, and depressive symptoms. R. 49-50, 56, 217. Due to these impairments, Walker contends that she is unable to work. R. 48-56.

On February 27, 2017, Walker filed a claim with the Social Security Administration for a period of disability and to receive disability insurance benefits. The Commissioner denied her claim and her request for reconsideration. R. 100, 108. Walker then sought and received a hearing before an administrative law judge ("ALJ"). R. 112, 130. The ALJ held a hearing on September 26, 2018 and denied Walker's claim on January 17, 2019. R. 12, 40.

Like all Social Security decisions addressing a claimant's assertion of disability, the ALJ's decision proceeded in five steps. In the first step, the ALJ determined that Walker was not engaging in "substantial gainful activity" since the onset of her disability, thus satisfying a threshold requirement for a disability finding. R. 17. In the second step, the ALJ determined that some of Walker's impairments, namely her right rotator cuff tear, asthma/emphysema, peripheral vascular disease, and rheumatoid arthritis, were severe enough to affect her work. *Id.* The ALJ also concluded that Walker's other impairments, including her depression, were not severe. R. 17-21.

At step three, if the ALJ finds, as in Walker's case, that any of the claimant's impairments are severe, he must consider all the claimant's impairments, regardless of severity level, and determine whether they satisfy the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16. A claimant is considered disabled if any of those listed criteria are met. *Id.* The ALJ concluded that none of Walker's impairments, including lupus and mixed connective tissue disease, met any of the listed criteria in the relevant regulations. R. 21-24. Because no

2

impairments satisfied the listed criteria, the ALJ paused to determine Walker's so-called "residual functional capacity" ("RFC"). R. 24-32. To determine a claimant's RFC, the ALJ considers all of a plaintiff's impairments—whether severe or not—and determines the level of activity that a claimant could engage in on a sustained basis. R. 16. In determining Walker's RFC, the ALJ considered Walker's physical symptoms and the supporting evidence and determined that Walker could perform light work with some exceptions. R. 24-32. Because, at step four, the ALJ determined that Walker's RFC did not enable her to do her past relevant work as a driver and material handler, the burden shifted to the Social Security Administration to show, at step five, that Walker was able to perform other work. R. 17, 32. At step five, the ALJ relied on the testimony of a vocational expert, who explained at the hearing that the jobs available for Walker's RFC existed in significant numbers in the national economy. R. 32-33. The ALJ therefore concluded that Walker is not disabled. R. 34.

Walker appealed the ALJ's decision to the Social Security Appeals Council, which denied her request for review—rendering the ALJ's decision the final decision of the Commissioner. R. 1; *see Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Walker filed this action for judicial review pursuant to 42 U.S.C. § 405(g) in December 2019.

## DISCUSSION

The Social Security Act authorizes judicial review of the final decision of the Commissioner of Social Security. 42 U.S.C. § 405(g). This Court reviews the Commissioner's legal determinations *de novo* and the Commissioner's factual findings deferentially. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). The Commissioner's decision will therefore be upheld if his findings are supported by substantial evidence. *See Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

3

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a scintilla," but can be satisfied by "less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the Commissioner. *See Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner; "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Commissioner must articulate enough detail and clarity in the analysis to allow meaningful appellate review. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001); *see also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (explaining the ALJ is "not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion"); *Yonts v. Barnhart*, No. 03 C 3420, 2004 WL 1005690, at *2 (N.D. Ill. May 4, 2004) ("It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, the Court must remand.").

Walker raises four objections to the ALJ's decision. First, Walker contends that the ALJ insufficiently considered the physical limitations that her lupus and mixed connective tissue disease impose, both by minimizing her diagnoses and failing to account for her symptoms in his RFC assessment. Second, Walker argues that the ALJ similarly minimized the symptoms of her depression in his severity analysis and ignored in his RFC assessment functional impairments that her depression causes. Third, Walker accuses the ALJ of "cherry picking" when highlighting inconsistencies between the record and her testimony about the intensity of her symptoms. Finally,

4

Walker faults the ALJ for denying her objections to the vocational expert's testimony at her hearing and challenges the substance of the vocational expert's job-availability testimony. The Court considers Walker's first, third, and fourth objections in turn and finds that they lack merit. Finding Walker's second objection persuasive, however, the Court remands for the ALJ to articulate rationally his analysis of Walker's difficulties in concentration and their impact on her RFC.

    I.       **ALJ's Consideration of Walker's Lupus**

Regarding Walker's first objection, the ALJ sufficiently considered the evidence in the record regarding Walker's lupus and mixed connective tissue disease diagnoses. Walker first protests that the ALJ did not mention any of Walker's lupus or connective tissue disease diagnoses in step two of his analysis, when he considered the severity of Walker's impairments. Any failure to label an impairment severe at step two, however, is harmless if an ALJ considers the impairment in step three. *See Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *7 (N.D. Ill. Jan. 17, 2012). This is because, if an ALJ finds at least one impairment severe at step two, he is "obligated to consider the combined effect of all of a claimant's impairments, both severe and non-severe, at later stages." *Id.* Here, the ALJ found some of Walker's symptoms to be severe, so he proceeded to step three, at which point he addressed Walker's lupus and mixed connective tissue disease diagnoses. That the ALJ did not attach the "severe" label to those impairments is not inherently harmful.

Walker further argues that, at step three, the ALJ "did not attach credence to multiple diagnoses of lupus and connective tissue disease" when determining whether those diagnoses satisfied the listed regulatory criteria. Pl.'s Memo Supp. Summ. J. at 10. This argument is difficult to parse, but on any reading, it fails to persuade the Court. If Walker contends that the ALJ failed

5

to give controlling weight to her treating physician's lupus diagnosis without good reason pursuant to the governing regulations at the time she filed her claim, *see* 20 C.F.R. § 404.1527(d)(2), the Court rejects that argument. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record," but an ALJ may discount such an opinion if he "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). The ALJ explained that after one of Walker's treating physicians, Dr. Hozman, initially diagnosed Walker with lupus, he referred to lupus in Walker's records only one more time and only as a "possible" diagnosis, prompting the ALJ to conclude that Dr. Hozman did not continue this diagnosis through subsequent evaluations. Although the ALJ relegated this analysis to a footnote, he more than "minimally articulate[d]" his reasons for ascribing little weight to Dr. Hozman's initial lupus diagnosis. *Skarbek*, 390 F.3d at 503. Even if reasonable minds could disagree with the ALJ's rejection of that diagnosis, this Court declines to re-weigh the evidence or substitute its judgment for the ALJ's. *See Zoch v. Saul,* 981 F.3d 597, 602 (7th Cir. 2020).

Walker next suggests that the ALJ ignored evidence in the record supporting the listed criteria for lupus and mixed connective tissue disease. Indeed, the ALJ's analysis of the criteria for those impairments amounted to recitations of the listed requirements and unsupported pronouncements that those requirements were not fulfilled. R. 23-24. But an "[a]n ALJ need not specifically articulate why a claimant falls short of a particular listing unless the claimant has presented substantial evidence that she meets or equals the listing." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 932 (N.D. Ill. 2011). Walker's problem is her failure to explain what evidence in the record the ALJ missed and why that evidence meets the listed requirements. *See id.* at 933. Instead of

6

referring to the applicable regulations' requirements for lupus, Walker improperly cites outside-the-record sources, including the Mayo Clinic's and the Lupus Foundation of America's websites. Pl.'s Memo Supp. Summ. J. at 10. Walker then recites a catalog of symptoms from which she suffers, but she does identify any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 that those symptoms support, let alone explain why her impairments fulfill those listings. *Id.* At step three, the burden is on the claimant to prove that her impairments satisfy a listed requirement. *See Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022). The Court cannot evaluate an ALJ's alleged deficiency if the claimant does not explain what the deficiency is.

For similar reasons, the ALJ was not required to consider lupus or mixed connective tissue disease in his RFC analysis. Just as at step three, at step four it is Walker's "burden to establish not just the existence of [limiting] conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). Apart from an unsubstantiated assertion that lupus-aggravated symptoms cause "off-task time and absenteeism," Walker does not indicate how lupus causes any functional limitations that the ALJ did not consider. Pl.'s Memo Supp. Summ. J. at 10-11. The ALJ, moreover, did consider all the symptoms of lupus that Walker identified in his RFC assessment. R. 30-31. Walker does not clarify what more the ALJ was supposed to evaluate. Accordingly, Walker has not met her burden to show that the ALJ inadequately considered lupus or its symptoms in any of the steps of his analysis.

## II. The ALJ's Credibility Finding

The Court's deferential standard of review resolves Walker's third objection regarding the ALJ's credibility finding. Walker argues that the ALJ "cherry picked" evidence when he noted inconsistencies in some of Walker's allegations. Unless an ALJ's credibility finding is "patently

wrong," however, this Court cannot disturb it. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). The Court finds no patent error in the ALJ's credibility assessment concerning the intensity, persistence, and limiting effects of Walker's symptoms. Although the ALJ found Walker's allegations of her symptoms credible, he found some inconstancies between Walker's claims of constant, chronic pain and the findings of medical examinations. For example, the ALJ noted that medical examinations reflected no strength or sensory deficits, that Walker's medical treatment had been limited, and that Walker reported that prescription medication proved helpful. R. 30. Based on that evidence, the ALJ reasonably concluded that Walker's allegations about the consistency, frequency, and intensity of her symptoms lacked sufficient support.

To be sure, the ALJ cannot discount Walker's statements about her symptoms solely because he thinks the "objective" medical evidence does not support it. *See Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006). In fairness to Walker, the ALJ's emphasis that "there is not sufficient objective support" for Walker's allegations, R. 30, toed the line of impermissibly "play[ing] doctor" when evaluating her credibility. *Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Nonetheless, the ALJ was entitled to look to objective medical evidence as one factor in evaluating Walker's credibility, as long as he considered others. *See Sawyer v. Colvin*, 512 F. App'x 603, 607 (7th Cir. 2013). Even though the ALJ did not emphasize these factors in his conclusion, the ALJ considered the inconsistencies between Walker's own statements, the positive effects of her medication, and the opinions of multiple physicians that Walker was able to perform light exertional work in his analysis. R. 30-31. Under the applicable regulations, the ALJ was permitted to consider all of these factors when evaluating Walker's credibility. *See* 20 C.F.R. § 404.1529(c). After looking to these

sources of evidence, the ALJ reasonably found inconsistent Walker's allegations of constant, chronic pain. *See Zoch*, 981 F.3d at 601 (ALJ reasonably discounted claimant's assertion of disabling pain after considering claimant's inconsistent statements, objective medical evidence, and physicians' opinions). Finding no patent error in the ALJ's analysis, the Court therefore defers to the ALJ's credibility findings.

### III. Vocational Expert Testimony

In her fourth objection, Walker challenges the procedure and substance of the vocational expert's testimony at the hearing before the ALJ. Walker first argues that the ALJ denied her an opportunity to cross-examine the vocational expert about the sources of the expert's information and her methods of calculating job-availability data. Walker was indeed entitled to an opportunity to challenge the vocational expert's method, qualifications, and reliability. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). By expressing to her counsel that he did not need to reiterate his briefed objections, Walker argues, the ALJ denied her any chance "to question the [vocational expert] about her testimony." Pl.'s Memo Supp. Summ. J. at 15.

The record belies Walker's assertion. Before the vocational expert testified, the ALJ asked if Walker's attorney had any objections to the expert's qualifications, and counsel responded that he did not. R. 60. After the expert's testimony, the ALJ asked Walker's counsel if he had "anything further," and counsel asked the expert a question about one of the ALJ's hypothetical scenarios. R. 66-67. Counsel then stated that he had "nothing further." R. 67. If counsel fails to question the vocational expert's foundation or reasoning despite an opportunity to do so, "an ALJ is entitled to accept the vocational expert's conclusion." *Donahue*, 279 F.3d at 446. Walker cannot claim prejudice from squandering an opportunity that was presented to her.

9

Regardless, the Court sees no issue with the substance of the vocational expert's testimony. Walker argues that the availability for one of the jobs that the vocational expert suggested, parts assembler, is much lower than the vocational expert cited, and hence does not exist in "significant numbers" in the economy as required by 20 C.F.R. 404.1560(c). Even if that were the case, and even had Walker's counsel raised this objection at the hearing, Walker does not contest the vocational expert's testimony about the availability of other jobs. The vocational expert testified that Walker could work as a cashier, a job with 500,000 positions available nationally, or a sales attendant, a job with 150,000 positions available nationally. R. 62. Such availability sits "well above the threshold for significance." *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011). The Court does not find Walker's arguments about the vocational expert's testimony persuasive.

### IV. The ALJ's Consideration of Walker's Depression

Walker's second argument, that the ALJ inadequately considered evidence of her depression, is her strongest. Walker's argument proceeds in two parts: first, that the ALJ's analysis of the severity of her depression was perfunctory and unsupported by the record, and second, that the ALJ failed to account for the limitations that her depression causes in his RFC assessment.

At the outset, the Court disagrees with Walker's global characterization of the ALJ's analysis of the effects of her depression as "perfunctory." R. 11. The ALJ considered the four functional areas listed in the so-called "paragraph B" criteria of the applicable regulations, which aim to assist ALJs in evaluating mental disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04. For three of the criteria—understanding, remembering, or applying information; interacting with others; and adapting or managing oneself—the ALJ explained why he found that Walker has no limitations, citing portions of the record that included treatment provider notes, physician evaluations, and Walker's own representations. R. 20-21. Walker does not point to anything in the

10

record that the ALJ overlooked or misconstrued regarding those three findings. Any contrary conclusion as to the three criteria discussed above would require this Court to re-weigh the evidence. That it cannot do. *See Kasarsky*, 335 F.3d at 543.

By contrast, the ALJ's conclusion that Walker exhibits only a mild limitation in the final paragraph B criteria—concentrating, persisting, or maintaining pace—presents a problem. The ALJ found that "treatment notes showed ***no ongoing issues with concentration***, which is generally found to be intact, but possibly exacerbated by pain and reported depressive symptoms." R. 20 (emphasis added). As Walker points out, multiple longitudinal depression screenings by Dr. Hozman reflected that Walker met the criteria for moderately severe depression and experienced trouble concentrating for "more than half the days." R. 366, 888, 891, 894. "[A]n ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability." *Deborah M.*, 994 F.3d at 788. In other words, the ALJ must "confront the evidence that does not support his conclusion and explain why it was rejected." *Id.* (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). In his analysis of Walker's concentration issues, the ALJ did not sufficiently explain why he passed over evidence of Walker's difficulties in concentration.

The ALJ did note that Walker "often denied difficulty concentrating on things," but in support, the ALJ provided three record citations that documented the same doctor's visit. R. 20- 21. This Court cannot characterize one denial in difficulty concentrating as occurring "often." As the Seventh Circuit has often recognized, symptoms of mental illness often fluctuate, so evidence of one good day does not amount to much. *See Mandrell*, 25 F.4th at 519; *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (collecting cases). Even had the ALJ simply neglected to cite more evidence in the record supporting Walker's purportedly frequent denials, the ALJ did not explain

11

why he placed more weight on Walker's denials than the many instances in the record reflecting Walker's difficulties concentrating. Multiple expressions of troubles in concentration spanning over a year is the kind of material evidence that must be explained away before it is cast aside. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("An ALJ may not ignore entire lines of evidence."). *Cf. Jones*, 623 F.3d at 1162 (failure to discuss one MRI showing mild degeneration in spinal disk was immaterial in light of treating physicians' consistent description of condition as mild or benign).

The Court further acknowledges the ALJ's overall finding that Walker "generally denied psychiatric symptoms in most records . . . except for Dr. Hozman's records" and that "DDS state agency psychological consults found the claimant's mental impairment was non-severe." R. 20. None of the cited records in which Walker denied psychiatric symptoms, however, specifically addressed her concentration problems. And again, the ALJ did not explain why he credited the DDS agency's consultants over Dr. Hozman's records. *See Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011) (ALJ was required to determine the value that a physician's assessment merited even if he refused to give controlling weight to those assessments). To be clear, the ALJ was entitled to weigh the evidence and discount the findings in Dr. Hozman's depression screenings. In doing so, however, he was obligated to explain why he reached that conclusion. *See Murphy v. Astrue*, 496 F.3d 630, 635 (7th Cir. 2007) (remanding because ALJ did not explain why evidence of accolades in claimant's school records trumped evidence of claimant's difficulties in attention span and concentration). Because the ALJ inadequately explained his analysis, remand is appropriate.

Even had the ALJ sufficiently explained his characterization of Walker's difficulties in concentrating, persisting, and maintaining pace as "mild," he further erred in failing to consider them in his RFC assessment. Time and again, both the Seventh Circuit and this Court have

emphasized that an ALJ must consider ***all*** of a claimant's impairments—including mild limitations in concentration, persistence, and pace—when conducting an RFC assessment. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *Gordon v. Saul*, No. 18 C 07096, 2021 WL 105804, at *5 (N.D. Ill. Jan. 11, 2021) (collecting cases); *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) (same). In the section of his decision discussing Walker's RFC, the ALJ recited evidence that touched upon Walker's claims of depression, but he did not provide a "logical bridge" between that evidence and the RFC. *Lothridge*, 984 F.3 at 1233 (quoting *Villano*, 556 F.3d at 562). Missing from the ALJ's discussion tying Walker's symptoms to her functional capacity is any mention of Walker's difficulties in concentration, persistence, or pace—difficulties that the ALJ acknowledged, albeit cursorily, in step two. By contrast, the ALJ assiduously considered Walker's range of physical symptoms and the limitations they produce when concluding that Walker could not sustain more than a limited range of light work. Of course, on remand, the evidence may reveal that Walker's difficulties in concentration do not significantly impact her ability to perform light work because, for instance, they have resolved or that medication has been helpful to Walker. *See Gordon*, 2021 WL 105804, at *5. But without an explanation to review, the Court cannot uphold the ALJ's decision. The ALJ therefore erred in both ignoring evidence of Walker's limitations in concentration and failing to incorporate the evidence that he did find into his RFC analysis.

    **V.    Remedy**

Walker argues that, in light of these errors, reversal and award of benefits is the proper remedy here; in the alternative, she asks that the matter be remanded. If the reviewing court finds that the Commissioner's decision is not supported by substantial evidence, "a remand for further proceedings is the appropriate remedy unless the evidence before the court compels an award of

13

benefits." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citing *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). An award of benefits is only compelled "where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (quotation marks and citation omitted). Here, the Court rejects the ALJ's decision, not because it is necessarily wrong, but because the ALJ failed to explain why he discounted evidence of Walker's difficulty in concentration and to include evidence of concentration limitations in his RFC analysis. The Court is not convinced that the record yields but one supportable conclusion, particularly given the varying degrees of Walker's depression reflected in the record. Remand is therefore the appropriate remedy.

Remand is not warranted, however, if the administrative error is harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). Whether error is harmless is a "prospective" question that requires a reviewing court to "look at the evidence in the record to see if [it] can predict with great confidence what the result on remand will be." *McKinzey*, 641 F.3d at 892. It is decidedly not "an exercise in rationalizing the ALJ's decision and substituting [the court's] own hypothetical explanations for the ALJ's inadequate articulation." *Id.* Remand is inappropriate "[i]f it is predictable with great confidence that the agency will reinstate its decision . . . because the decision is overwhelmingly supported by the record." *Spiva*, 628 F.3d at 353. Although the ALJ may—after more fulsome explanation where required by this opinion—reinstate his decision on remand, it is not fair to say that the decision is so overwhelmingly supported by the record that the Court can predict that result with great confidence. After reconsidering the evidence of Walker's difficulties in concentration and incorporating them into his analysis of Walker's RFC, the ALJ may change his overall assessment of the severity, persistence, or functional limitation of Walker's disability. The flaws in the ALJ's

analysis here, therefore, cannot be said to be harmless. It bears emphasis that this Court is not re-weighing evidence or concluding that Walker is disabled; it is only observing that the ALJ's decision, as it currently stands, fails to permit a fully informed review.

\* \* \*

For the foregoing reasons, the Court grants in part and denies in part Walker's motion for summary judgment, vacates the opinion below, and remands this matter to the Social Security Administration for further proceedings consistent with this Opinion.

Dated: September 26, 2022

John J. Tharp, Jr.
United States District Judge